## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **DARRYL STEELE,** | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. **3:14-CV-3310-L** |
| | § | |
| **JOHNSON & JOHNSON,** *et. al.***,** | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendants, Johnson & Johnson, Janssen Pharmaceuticals, Inc., and

Janssen Research and Development, LLC's ("Defendants") Motion for Summary Judgment (Doc.

30), filed May 22, 2015.  Darryl Steele ("Plaintiff" or "Steele") filed no response to the motion for

summary judgment.  After careful consideration of the motion, brief, exhibits, record, and

applicable law, the court **grants** Defendants, Johnson & Johnson, Janssen Pharmaceuticals, Inc.,

and Janssen Research and Development, LLC's Motion for Summary Judgment.

### I.    Background

Steele originally filed Plaintiff's Complaint against Defendants Johnson & Johnson, Ortho-

McNeil Pharmaceutical, Inc., and Johnson & Johnson Pharmaceutical Research & Development,

LLC on March 4, 2009.  This action was assigned to Judge John R. Tunheim of the District of

Court of Minnesota pursuant to the Multi-District Litigation ("MDL") List.  On February 2, 2010,

Judge Tunheim issued an order that designated six cases as the bellwether cases in the MDL. This

action was not included in that order.  On January 4, 2012, Judge Tunheim issued an electronic

order that added Janssen Pharmaceuticals, Inc. and Janssen Research & Development, LLC as

parties.  The order also terminated Ortho-McNeil Pharmaceuticals, Inc.; Johnson & Johnson

Pharmaceutical Research and Development, LLC; and Ortho-McNeil Pharmaceutical, Inc. as

parties.  On September 12, 2014, the case was transferred from the District of Minnesota to the Northern District of Texas and was assigned to this court.

Plaintiff contends that he suffered a severe and debilitating tendon injury after his use of the drug Levaquin.  Pl.'s Compl. ¶ 6. He asserts claims for strict product liability for manufacturing and design defect; strict product liability for failure to warn; negligence; breach of express and implied warranties for the design, manufacture, production, testing study, inspection, labeling, marketing, advertising, sales, promotion, and distribution of Levaquin; fraud; violation of consumer protection and unfair trade practice laws; and unjust enrichment. *Id*. ¶ 7.

Defendants have filed a motion for summary judgment and contend that Plaintiff's claims fail because he lacks evidence to support his manufacturing, marketing, and design defect claims; and he lacks sufficient evidence to support a finding of medical causation.

## II.     Motion for Summary Judgment Standard - No Response Filed

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party.  *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).  Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment.

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Id.* (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are

**Memorandum Opinion and Order - Page 3**

"irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

Steele filed no response to the summary judgment motion. This failure, of course, does not permit the court to enter a "default" summary judgment. *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988). A court, however, is permitted to accept the movant's facts as undisputed when no response or opposition is filed. *Id.* Normally, "[a] summary judgment nonmovant who does not respond to the motion is relegated to [his] unsworn pleadings, which do not constitute summary judgment evidence." *Bookman v. Schubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)). Plaintiff's pleadings are not verified and, therefore, he has presented no summary judgment evidence. Accordingly, the court accepts Defendants' facts as undisputed.

## III.   Undisputed Facts

Levaquin, the brand name for the drug levofloxacin, is a broad spectrum anti-infective fluoroquinolone medication first marketed in the United States in 1997. Levaquin has been approved for a variety of indications in the country, including, community-acquired pneumonia; acute bacterial exacerbation of bronchitis; acute bacterial sinusitis; complicated urinary tract infections; and complicated skin infections. The label on Levaquin in the United States specifically warned, since its inception and all times thereafter, of a risk of tendon disorders associated with the use of the drug. The warning was based on the recognition of a potential risk of tendon injuries associated with fluoroquinolones available prior to Levaquin's introduction into the market.

In October 2007, Dr. Samuel Hoover prescribed Levaquin to Plaintiff.  In October 2007, Levaquin's warning label included the following language:

> Ruptures of the shoulder, hand, Achilles tendon, or other tendons that required surgical repair or resulted in prolonged disability have been reported in patients receiving quinolones, including LEVAQUIN.  Postmarketing surveillance reports indicate that this risk is increased in patients receiving concomitant corticosteroids, especially the elderly.  LEVAQUIN should be discontinued if the patient experiences pain, inflammation, or rupture of a tendon.  Patients should rest and refrain from exercise until the diagnosis of tendinitis or tendon rupture has been confidently excluded.  Tendon rupture can occur during or after therapy with quinolones, including LEVAQUIN.

Def.'s Mot. Summ. J. 4-5.

## IV.    Analysis

### A.    Plaintiff's Product Liability Claims

As previously stated, no response was filed by Steele.  When no response is filed, the court is permitted to accept as undisputed the facts and evidence in support of a movant's summary judgment motion.  *Eversley v. MBank*, 843 F.2d at 174.  Accordingly, the court has relied on the undisputed facts presented by Defendants. Under Texas law, there are three theories of product liability: manufacturing defect, marketing defect, and design defect.  *Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 382 (Tex. 1995) (internal citations omitted).  "[T]o recover for an injury on the theory of products liability, the plaintiff bears the burden of proving that (1) the defendant placed a product into the stream of commerce; (2) the product was in a defective or unreasonably dangerous condition; and (3) there was a causal connection between that condition and the plaintiff's injuries or damages."  *Ranger Conveying & Supply Co. v. Davis*, 254 S.W.3d 471, 479 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (internal citations omitted).

### 1.    Manufacturing Defect

For a viable manufacturing defect claim, the finished product must deviate from its specifications or planned output in a manner that renders it unreasonably dangerous.  *American*

*Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 434 (Tex. 1997). To recover on a manufacturing defect claim, Plaintiff must prove "that the product was defective when it left the hands of the manufacturer and that the defect was a producing cause of [his] injuries." *Gharda USA, Inc. v. Control Solutions, Inc.*, 464 S.W.3d 338, 352 (Tex. 2015) (citations omitted). Plaintiff provides no evidence that the product he received was defective when it left the manufacturer, or that the defect caused his injuries. Accordingly, there is no genuine dispute of material fact with respect to whether the product Plaintiff received was defective when it left the hands of the manufacturer. Defendants, therefore, are entitled to judgment as a matter of law on Plaintiff's strict liability and negligent manufacturing defect claims.

### 2.    Marketing Defect

A marketing defect is "[a] defendant's failure to warn of a products potential dangers when warnings are required . . . ." *American Tobacco*, 951 S.W.2d 426. "A marketing defect is prove[d] when the evidence shows that a defendant fails to warn of a product's potential dangers, when warnings are required, and that the lack of adequate warnings or instructions renders an otherwise adequate product unreasonably dangerous." *Ranger Conveying*, 254 S.W.3d 480. The evidence establishes that Levaquin did warn of the potential dangers associated with tendon injuries. Accordingly, there is no genuine dispute of material fact regarding a failure to warn, and Defendants are entitled to judgment as a matter of law on Plaintiff's strict liability and negligent marketing claims.

### 3.    Design Defect

In Texas, to recover on a design defect claim, "[P]laintiff must prove that (1) the product was defectively designed so as to render it unreasonably dangerous; (2) a safer alternative design existed; and (3) the defect was a producing cause of the injury for which the plaintiff seeks

recovery." *Genie Indus., Inc. v. Matak*, 462 S.W.3d 1, 6 (Tex. 2015) (citations omitted). Plaintiff

did not provide any evidence that the product was unreasonably dangerous; that safer alternative

designs existed; or that the defect was the producing cause of his injuries.  Accordingly, there is

no genuine dispute of material fact regarding the three elements to establish these claims, and

Defendants are entitled to judgment as a matter of law on Plaintiff's strict liability and negligent

design defect claims.

### B.      Plaintiff's Remaining Claims

Plaintiff also alleges claims for breach of implied and express warranties; violations of both

Texas's and Minnesota's unfair and deceptive trade practices laws; fraud; Minnesota's Consumer

Fraud Act; Texas's Consumer Protection Act; Minnesota's False Advertising Act[1]; and unjust

enrichment.  As Defendants correctly note in their motion, causation is an element of all of these

claims.  *See Hyundai Motor Co. v. Rodriguez ex rel. Rodriguez*, 995 S.W.2d 661, 667 (Tex. 1999)

("Liability for breach of warranty requires a showing of proximate cause."); *Alexander v. Turtur*

*& Assocs., Inc.*, 146 S.W.3d 113, 117 (Tex. 2004) ("To prevail on a claim under the DTPA, a

plaintiff must prove that a violation of the statute was a producing cause of the injury."); *Group*

*Health Plan, Inc. v. Phillip Morris, Inc.*, 621 N.W.2d 2, 13 (Minn. 2001) (Causation is a necessary

element to recover damages for violations of Minn. Stat. §§ 325F.67, 325F.69, and 325D.13.);

*Hartford Fire Ins. Co. v. C. Springs 300, Ltd.*, 287 S.W.3d 771, 781 (Tex. App.—Houston [1st

Dist.] 2009, pet. denied) (Causation is a necessary element of fraud.).  Plaintiff provides no

evidence that Defendants' conduct caused his injuries or *that he was even injured at all*.

---

[1] Plaintiff attempts to assert claims under Texas and Minnesota statutes; however, it is unclear under which state's law Plaintiff pleads.  The court has researched the relevant Texas and Minnesota statutes, and the substance of the statutes and applicable law in each state is essentially the same.  Accordingly, the court determines that the result would be the same, regardless of the state statutes' under which Plaintiff asserts his claims.

Moreover, unjust enrichment is not a separate cause of action. *See Chapman v. Commonwealth Land Title Ins. Co.*, 814 F. Supp. 2d 716, 725 (N.D. Tex. 2011) (Lindsay, J.) (granting summary judgment and noting that "Texas courts of appeals have consistently held that unjust enrichment is not an independent cause of action but instead a theory of upon an action for restitution may rest") (internal citations omitted); *Summers v. Pennymae Corp.,* 2012 WL 5944943, at *10 (N.D. Tex. Nov. 28, 2012) (Lindsay, J.) (granting motion to dismiss because "request for unjust enrichment is equitable in nature and does not constitute an independent cause of action"); *see also Dallas Cnty., Tex. v. MERSCORP, Inc.*, 2013 WL 5903300, at *9 (N.D. Tex. Nov.4, 2013) (O'Connor, J.) ("Unjust enrichment is not an independent cause of action under Texas law."), *aff'd*, 791 F.3d 545, 558 (5th Cir. 2015). Accordingly, Plaintiff fails to raise a genuine dispute of material fact as to any of his remaining claims, and Defendants are entitled to judgment as a matter of law on these claims.

## V.    Conclusion

For the reasons stated herein, the court **determines** that no genuine dispute of material fact with respect to any of Plaintiff's claims. Defendants are therefore entitled to judgment as a matter of law. Accordingly, the court **grants** Defendants, Johnson & Johnson, Janssen Pharmaceuticals, Inc., and Janssen Research and Development, LLC's Motion for Summary Judgment and **dismisses with prejudice** this action. Judgment will issue by separate document as required by Federal Rule of Civil Procedure 58.

**It is so ordered** this 23rd day of October, 2015.

Sam A. Lindsay
United States District Judge

**Memorandum Opinion and Order - Page 8**